

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7019 | **DATE** | 4/15/2003 |
| **CASE TITLE** | | Illinois Tool Works, Inc. Vs. Powers Fasteners, Inc. | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. We conclude that plaintiff's construction, to the extent indicated, is contrary to the claim language and, to the extent that it can be supported by the claim language, it does not give fair notice to the public in light of the claim language, the specification and the drawings. See Athletic Alternatives, Inc. v. Prince Mfg., Inc., 73 F.3d 1573, 1581 (Fed.Cir. 1996). Defendant's construction is adopted, except the curve of the upper portion need not be smooth and unfaceted (see pl.exh.C). Finally, we deny the objection to the declaration of Paul Gaudron. Status hearing set for May 13, 2003 at 9:15am.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | APR 17 2003 date docketed | | |
| ✓ | Docketing to mail notices. | | | 40 | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| WAH courtroom deputy's initials | | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ILLINOIS TOOL WORKS, INC., )
)
        Plaintiff, )
)
vs. ) No. 01 C 7019
)
POWERS FASTENERS, INC., )
)
        Defendant. )

### MEMORANDUM OPINION AND ORDER

Plaintiff sues defendant for infringement of U. S. Patent No. 5,069.340 ('340 patent), relating to a strip of collated fasteners for a fastener-driving tool, primarily to install metal track to concrete for partitions. Claim 1 and its dependent claims are oriented toward the breakable portion of the fastener and are not relevant here. Claim 9 is oriented toward guidance of the fastener. It is claim 9 that we must construe. It reads as follows (edited to highlight the words and phrases disputed by the parties):

>A strip of collated fasteners, the strip comprising a plurality of fasteners and a carrier molded from a polymeric material, each fastener having an elongate shank with a pointed end and a head and being designed to be forcibly driven through a workpiece, into a substrate, the carrier comprising
>
>    a separate *sleeve* associated with each fastener,
>
>    a representative sleeve including a lower, annular portion and an upper portion integral with the annular portion,
>
>    the representative *sleeve gripping* the shank of the associated fastener *with the lower, annular portion* nearer to the pointed end of the shank of the associated fastener *and with the upper portion* nearer to the head of the associated fastener,
>
>    the upper portion having at least one *outwardly opening,*

40

> *curved, concave recess having an open window,* from which a portion of the shank of the associated fastener emerges,
>
> the carrier comprising frangible bridges between adjacent ones of the sleeves of the carrier.

The parties largely agree about the applicable law, and so do we. Claim construction is a question of law. We first look to the claim language itself, generally giving the claim language the full range of its ordinary meaning as understood by a person skilled in the art (here, the parties agree, a mechanical engineer), unless the text of the patent makes clear that a word was used with a special meaning. The patent text reveals no special usage and, accordingly, we can turn to commonly used dictionaries as an aid in construction. We also turn to the specification, drawings, and, customarily, the prosecution history (here there is none of any relevance), although the claims are not necessarily limited to the embodiments described in the specification. The public is entitled to rely upon the public record of a patent in determining the scope of the patent's claims.

Defendant contends that a sleeve is a tubular holder which fully encloses the shank of the fastener, although the exterior and the bore of the holder may be round, oblong, square, rectangular or of some other shape. Plaintiff argues that a sleeve has a broader meaning – any encasement or shell unto which a fastener fits. It cites a phonograph record jacket as an example. Its expert has testified that the word "sleeve" needs context, and we agree. It also contends that "sleeve" includes a holder which grips the shank of the fastener in its lower, annular portion, even though the upper portion does not grip the fastener. We disagree.

We note that even a record jacket fully encloses the record, except for the opening through which the record is inserted. That being said, we note that the fastener, which is

round, would necessarily be enclosed by a tubular holder. The issue is not whether a tubular holder must enclose the shank, as the lower annular portion does so enclose. The issue, rather, is whether the upper portion must also "grip" the shank.

Plaintiff contends that the words following the first "with" merely determines the orientation of the upper and lower portions of the sleeve relative to the head and point of the fastener; it is enough that at some point (at the lower portion) the sleeve grips the shank. It points out that one drawing indicates that the bore of the preferred embodiment of the upper portion is not in contact with the shank and that the specification at one point describes the lower portion as gripping the shank, while the upper portion has a generally quadrilateral aperture, having four interior faces, which "confines" the shank.

The claim language, however, makes no distinction between the upper and lower portions with respect to gripping the shank. If the "with" language were to be interpreted as plaintiff contends, then the reference to the location of the upper portion would be entirely superfluous. The claim states that the sleeve grips the shank with the upper portion *and* the lower portion.

Moreover, the patent appears to use "grip" and "confine" interchangeably. The specification refers to a "generally quadrilateral aperture having four interior faces confining the shank ...," with a general hexagonal (exterior) shape, two of the six faces parallel to each other "but not to any of the four gripping faces" (col. 2, l. 28-35). That description is also consistent, and only consistent, with an upper portion having a tubular holder. The specification refers to the upper portion "gripping" the fastener (col. 6, l. 37-38). Finally, every drawing in the patent depicting the sleeve shows a holder with both an upper and lower

tubular sleeve. We conclude that the claim requires that the shank be firmly held by a tubular holder in both the upper and lower portions of the sleeve.

The upper portion must also have at least one outwardly opening, curved, concave, recess having an open window. That covers, according to the plaintiff, an indented or receding part that is arched or curved inward, resulting in an opening in the recess that allows the shank of the fastener to pass through. Plaintiff may be correct that a curved recess does not require a smooth curve, a concave recess need only arch inward and a recess can be an indentation or receding part. Further, a window can be without an upper surface, such as some bank tellers' windows. That is, however, pushing the limits of language. One would hardly expect a staircase between two walls to be described as a series of outwardly opening, curved, concave recesses having open windows.

More importantly, we believe, is that the meaning of those terms is dictated by the nature of the sleeve claimed. If the sleeve must have a tubular holder in both the upper and lower portions, then the opening necessarily is more like the interior surface of a thin slice of cantaloupe (a partially eaten cantaloupe, perhaps, as the curve may be irregular), with the window bounded above by the upper portion of the holder.

We conclude that plaintiff's construction, to the extent indicated, is contrary to the claim language and, to the extent that it can be supported by the claim language, it does not give fair notice to the public in light of the claim language, the specification and the drawings. *See* Athletic Alternatives, Inc. v. Prince Mfg., Inc., 73 F.3d 1573, 1581 (Fed.Cir. 1996). Defendant's construction is adopted, except the curve of the upper portion need not be smooth and unfaceted (*see* pl. exh.C).

Finally, we deny the objection to the declaration of Paul Gaudron. While much of it relates to infringement by defendant, which is not before us, some of it relates to claim construction.

*James B. Moran*
JAMES B. MORAN
Senior Judge, U. S. District Court

*April 15*, 2003.