# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 7019 | DATE | 10/7/2003 |
| CASE TITLE | ILLINOIS TOOL WORKS, INC. vs. POWERS FASTENERS, INC. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Following the court's construction of the language of claim 9, defendant has renewed its motion for summary judgment. That motion is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

courtroom deputy's initials: LG

date docketed: OCT 0 9 2003

Document Number: 63

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS TOOL WORKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 01 C 7019 |
| | ) | |
| POWERS FASTENERS, INC., | ) | |
| | ) | |
| Defendant. | ) | |



## MEMORANDUM OPINION AND ORDER

Following the court's construction of the language of claim 9, defendant has renewed its motion for summary judgment. That motion is granted.

The issue can best be approached by first describing why plaintiff contends that the motion for summary judgment should be denied. Plaintiff argues that the accused fasteners have a lower annular portion of a sleeve and an upper portion that consists both of a gusset region arising from and above the lower annular portion and two posts. It does not contend that the posts grip the fastener (although it contends that they "confine" the fastener), but it contends that the gusset region does grip the fastener.[1] That, it argues, is a literal infringement of that element of the claim. Further, the gusset region (part of the upper portion), by gripping the fastener, is equivalent to an upper annular portion because it performs the same function in the same way to achieve substantially the same result. The indented opening may not literally be the window claimed because it is bounded on three sides only. However, it performs the same function, metal-to-metal contact between the guiding ribs of the tool's

---

[1] Defendant claims that the gusset region does not grip the fastener, and explains why, but we think that there is, for now, an issue of material fact as to whether or not the gusset region grips the fastener.

guiding device and the shank of the fastener[2], in substantially the same way, with substantially the same result. Finally, the accused strips contain structures equivalent to the "concave recess" of claim 9 because the recess performs the same function, to guide the fastener strip "longitudinally" through the guiding device by providing an exposed surface to interact with the guiding device's ribs, and it does so in substantially the same way with the same result.

The equivalency doctrine is alive and well, although somewhat restricted as a result of Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co., 520 U.S. 17 (1997). As the Court there noted, however, "There can be no denying that the doctrine of equivalents, when applied broadly, conflicts with the definitional and public-notice functions of the statutory claiming requirement." *Id.* at p. 29. While that case rejects the notion that the intent of the alleged infringer plays a role in determining equivalency, the law remains that designing around a patent works to the advantage of the public and it is only when the changes in the accused device are so insubstantial as to result in a fraud on the patent that application of the equivalency doctrine becomes desirable. Slimfold Mfg. Co. v. Kinkead Industries, Inc., 932 F.2d 1453 (Fed.Cir. 1991). That doctrine is intended to reach unscrupulous copyists who make insubstantial changes that, from the perspective of one skilled in the art, add nothing of significance. Valmont Industries, Inc. v. Reinke Mfg. Co., Inc., 983 F.2d 1039 (Fed.Cir. 1993). As we have noted before, however, the public is entitled to fair notice of the scope of protection in light of the claim language, the specification and the drawings, *see* Athletic Alternatives, Inc. v. Prince Mfg., Inc., 73 F.3d 1573, 1581 (Fed.Cir. 1996), and anyone is free to market a device beyond the ambit of protection provided by that fair notice. Finally, while equivalence is a

---

[2] We treat the magazine as a component of the guiding device.

factual matter normally reserved for a fact-finder, it is governed by the usual concepts of summary judgment, and the application of the all-elements rule.

Application of the all-elements rule is a matter of law. <u>Lockheed Martin Corp. v. Space Systems/Loral, Inc.</u>, 324 F.3d 1308, 1320-21 (Fed.Cir. 2003). That rule serves the concept of public notice. We cannot "erase a plethora of meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement." <u>Perkins-Elmer Corp. v. Westinghouse Elec. Corp.</u>, 822 F.2d 1528, 1532 (Fed.Cir. 1987).

We turn then to a comparison of the disclosed and accused structures. We note, initially, that plaintiff's argument regarding equivalency rests not on just one equivalency concept but on three, and it must prevail on all three in order to establish infringement. While we are not aware of any precedent which discusses multiple equivalency contentions, common sense dictates that an effort to expand protection based upon multiple equivalencies should be viewed with considerable suspicion.

The structure disclosed by the claim, in light of the specification and drawings, has an upper gripping portion and a lower gripping portion, separated by an outwardly opening, curved, concave recess having an open window. There is, therefore, a recess between outwardly directed projections. *See* <u>Dayco Products, Inc. v. The Total Containment, Inc.</u>, 258 F.3d 1317, 1327 (Fed.Cir. 2001).

The upper portion of the accused structure is recessed from the lower portion, but the structure does not have a recess, nor does it have a window as we have construed the claim. The recess of the disclosed structure has two functions, to facilitate the breakage of the upper portion of the sleeve and to interact with the guidance ribs to maintain proper alignment of

the strip through the guidance device. The breakage function is irrelevant for present purposes. That is the subject of other claims not implicated here. But the alignment function is implicated here. The strip is confined by both the upper and lower portions, one above and one below, which positions the strip within the guiding device. The accused device has no outwardly projecting upper portion and, accordingly, only the lower portion is available for guidance. And, as plaintiff itself has demonstrated, the absence of that upper surface can make a difference. In response to defendant's competition, plaintiff redesigned its guiding device so as to remove a portion of the guidance rib which rode between the upper and lower portions. The disclosed structure continued to be properly positioned; the accused structure did not, without a modification of the guidance tool, because there was no structure that corresponded with the upper projection. Guidance depended solely on the lower annular ring.

Further, the accused structure is not gripped by an upper portion and a lower portion separated by a recess. There is gripping by the "upper portion" only if the gusset region is considered as distinct from the lower annular portion, and as part of the upper portion (and then only if it does grip–a matter in dispute). But the gusset region is itself only a slight rise from the lower annular portion and is an integral part of that portion of the structure. All the gripping of the accused device is in one contiguous area. In short, we conclude that defendant effectively designed around the patent by a structure that is substantially different from the structure disclosed and claimed in the patent.

                                                    JAMES B. MORAN
                                                    Senior Judge, U. S. District Court

Oct. 7, 2003.

# United States District Court
## Northern District of Illinois
### Eastern Division

ILLINOIS TOOL WORKS, INC.	**JUDGMENT IN A CIVIL CASE**

v.	Case Number: 01 C 7019

POWERS FASTENERS, INC.

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that following the court's construction of the language of claim 9, defendant has renewed its motion for summary judgment. That motion is granted.

Michael W. Dobbins, Clerk of Court

Date: 10/7/2003

Linda Garth, Deputy Clerk